IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **BRANDON W. OWENS,** ) | |
| ) | |
| **Individually And On Behalf Of All** ) | |
| **Others Similarly Situated,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| v. ) | Case No. 12-CV-04157 |
| ) | |
| **DART CHEROKEE BASIN** ) | |
| **OPERATING CO. LLC, and** ) | |
| **CHEROKEE BASIN PIPELINE, LLC,** ) | |
| ) | |
| **Defendants.** ) | |

### DEFENDANTS' MEMORANDUM IN OPPOSITION
### TO PLAINTIFF'S MOTION TO REMAND

Defendants Dart Cherokee Basin Operating Company, LLC ("DCBO") and Cherokee Basin Pipeline, LLC ("CBPL") submit this memorandum in opposition to Plaintiff Brandon W. Owens's Motion to Remand (Doc. 12). Defendants have established through the Notice of Removal (Doc. 1) and Plaintiff's Complaint that diversity jurisdiction exists pursuant to 28 U.S.C. § 1332(d) and, accordingly, this matter should remain in the United States District Court for the District of Kansas. In support, Defendants state the following:

### INTRODUCTION

Plaintiff is a royalty owner alleging that he is being underpaid for royalties from DCBO. Plaintiff is a Kansas citizen. Both defendants are citizens of other states. The Complaint alleges that, "Defendants operate over 500 wells in Kansas with one or more royalty owners for each well." *Complaint*, ¶ 15. In addition to himself, Plaintiff seeks to represent a class of similarly situated individuals. This class, as defined in the Complaint, would include "All royalty owners who were paid royalties from Dart Cherokee Basin Operating CO., LLC or Cherokee Basin

Pipeline, LLC working interest Kansas wells from January 1, 2002 to the date of the Class Notice." *Complaint*, ¶ 12. Plaintiff did not include any information or allegation as to a total amount of damages sought nor did Plaintiff attempt to limit the damages sought. *See generally, Complaint*.

In the Notice of Removal (Doc. 1), Defendants set forth the parties' diverse citizenship and facts regarding the unstated amount in controversy based on the facts of Plaintiff's Complaint. Defendants set forth with specificity: the class period (over ten years), the number of wells (at least 700), the allegations regarding the alleged additional royalties owed arising from purportedly improper deductions, and that DCBO had undertaken initial efforts to quantify what additional royalties would be owed if the relief sought by Plaintiff was granted. These calculations, as set forth in the Notice of Removal, demonstrated that the relief sought would exceed $8.2 million. *Notice of Removal*, ¶¶ 9, 10, 12, 13, 14, and 15. This conservative figure even took into account the likelihood that the class would be unable to recover for the entire class period despite Plaintiff's allegations to the contrary. *See Declaration of Charles E. Henderson*, attached hereto as Exhibit A, ¶ 7.

In his Motion to Remand, Plaintiff does not state that he is seeking less than the jurisdictional amount. Indeed, Plaintiff does not actually address Defendants' statements about the amount in controversy but half-heartedly categorizes Defendants' statements as "a bare allegation." As set forth more fully below, Defendants demonstrated with the Notice of Removal that the amount in controversy exceeds $5 million and no other basis exists for remand.

In additional support, Defendants attach the Declaration of Charles E. Henderson, *Exhibit A*, which further outlines the calculations initially conducted, those that now exist based on limited informal discovery, and the calculations performed by Plaintiff relating to the limited

2

discovery. This additional information—all of which may be reviewed by the Court—further demonstrate that the amount in controversy exceeds $5 million. *See generally*, *Exhibit A*.

The calculations derived from the limited discovery are especially telling as the information produced was directly responsive to Plaintiff's requests. These calculations show that Plaintiff's claims for the entire class period far exceed the jurisdictional threshold. Plaintiff calculates damages of $21.5 million, which includes interest of $7.348 million. Plaintiff specifically claims underpaid royalty for the putative class in the amount of $10,427,969.01, a claim to improperly paid conservation fees totaling $97,816.33, and a claim for unpaid royalties due to shrinkage in the amount of $3,703,674.13. Without interest, Plaintiff's claims total $14,229,459, almost three times the jurisdictional threshold. *Exhibit A*, at ¶ 10. Moreover, the parties confirmed to the Court during a status conference on April 30, 2013, that Plaintiff's settlement demands did not dip below the $5 million jurisdictional threshold during the course of mediation.

Plaintiff's motion to remand should be denied because Defendants have established, through the Notice of Removal, the face of the Complaint, and through limited discovery, that the amount in controversy exceeds $5 million.

## ARGUMENTS AND AUTHORITIES

### I.    Standard of Review

Defendants removed this action pursuant to 28 U.S.C. § 1441 and 28 U.S.C. § 1332(d). Plaintiff alleges that the only defect in the removal lies with the amount in controversy. In reviewing a motion to remand, the removing party bears the burden in demonstrating that removal is appropriate. *Laughlin v. Kmart Corp.*, 50 F.3d 871, 873 (10th Cir. 1995). Refusing to

set forth a monetary demand for damages is insufficient to prove that the amount in controversy cannot be met. *McPhail v. Deere & Co.*, 529 F.3d 947, 955 (10th Cir. 2008).

## II.     Defendants Have Established that the Amount In Controversy Exceeds $5 Million Based on the Notice of Removal and the Face of the Complaint.

In determining the amount in controversy for an action removed pursuant to the Class Action Fairness Act ("CAFA," found in 28 U.S.C. § 1332(d)), the question is not how much the plaintiff will recover, but "an estimate of the amount that will be put at issue in the course of the litigation." *Frederick v. Hartford Underwriters Ins. Co.*, 683 F.3d 1242, 1245 (10th Cir. 2012). When, as here, the plaintiff does not seek to recover a specified amount of damages, it is appropriate for the removing party to assert the amount in controversy. 28 U.S.C. § 1446(c)(2). It is also appropriate for the Court to evaluate the amount in controversy based on the face of the Complaint. *McPhail v. Deere & Co.*, 529 F.3d 947, 955-56 (10th Cir. 2008)

In *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 541-42 (7th Cir. 2006), the court set out what a removing defendant can do to establish the amount in controversy: "We have suggested several ways in which this may be done—by contentions, interrogatories or admissions in state court; by calculation from the complaint's allegations; by reference to the plaintiff's informal estimates or settlement demands; or by introducing evidence, in the form of affidavits from the defendant's employees or experts, about how much it would cost to satisfy the plaintiff's demands." (internal citations omitted).

The Federal Courts Jurisdiction and Venue Clarification Act of 2011 ("JVCA") amended 28 U.S.C. § 1446 regarding the procedure for removal and, as set forth above, specifically addresses removal based on diversity jurisdiction. Section 1446(c)(2) states:

> 2) If removal of a civil action is sought on the basis of the jurisdiction conferred by section 1332(a), the sum demanded in good faith in the initial pleading shall be deemed to be the amount in controversy, except that—

4

> (A) the notice of removal may assert the amount in controversy if the initial pleading seeks--
> >  (i) nonmonetary relief; or
> >  (ii) a money judgment, but the State practice either does not permit demand for a specific sum or permits recovery of damages in excess of the amount demanded; and
>
> (B) removal of the action is proper on the basis of an amount in controversy asserted under subparagraph (A) if the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds the amount specified in section 1332(a).

In *Frederick vs. Hartford Underwriters Ins. Co.*, 683 F3d. 1242, (10th Cir. 2012) the Court of Appeals for the Tenth Circuit reaffirmed *McPhail* and extended the rationale to class actions under CAFA stating:

> We join the latter set of courts, and hold that a defendant seeking to remove under CAFA must show that the amount in controversy exceeds $5,000,000 by a preponderance of the evidence. In doing so, we extend our precedent in *McPhail* to the CAFA context and align ourselves with the majority of other circuits which have adopted the preponderance standard. *See generally*, *McPhail*, 529 F.3d at 954-55 (explaining the rationale behind the preponderance standard). Specifically, we agree that there is "no logical reason why we should demand more from a CAFA defendant" than other parties invoking federal jurisdiction. *Bell*, 557 F.3d at 957. This is especially so in light of the recently passed JVCA, which largely codified the holding of *McPhail*. *See* Pub. L. No. 112-63, 125 Stat. 758 (2011). By adopting the preponderance standard, we ensure that defendants seeking removal face the same burden regardless of whether they are invoking simple diversity jurisdiction or CAFA jurisdiction.

*Id.* at 1246-47.

In the instant case, the Petition filed in state court contained no allegation as to the amount in controversy or any claim as to the amount of damages being claimed. Under the JVCA therefore Defendants were entitled to assert the amount in controversy as part of their Notice of Removal which they did. The amount so asserted, as can be seen from the facts

5

asserted in the Notice of Removal and herein will either be uncontested or is, at a minimum, sufficient to establish the operative jurisdictional facts by a preponderance of the evidence. *Id*. at 1248.

Defendant relies on inapplicable cases. In *Laughlin*, the removing defendant did not set forth an amount in controversy but incorporated by reference the plaintiff's demand for relief: "in excess of $10,000 for each of two claims." *Laughlin*, 50 F.3d at 873. Without more in the notice of removal, the defendant could not establish that the amount in controversy requirement had been met. *Id.* Similarly, in *Butler v. Target Corp.*, 2012 WL 5362974 (D. Kan. Oct. 31, 2012), the defendant failed to establish an amount in controversy because the defendant did not set forth any allegations that the amount in controversy exceeded the sixty-thousand dollar demand in the plaintiff's complaint when 28 U.S.C. 1446(c)(2) states that "the sum demanded in good faith in the initial pleading shall be deemed to be the amount in controversy . . . ."

The allegations of the complaints alone in both *McPhail* and in *Luckett v. Delta Airlines, Inc.*, 171 F.3d 295 (5th Cir. 1999) were sufficient for the courts to find that the amount in controversy exceeded the jurisdictional threshold for diversity jurisdiction. In *McPhail*, the plaintiff alleged in the complaint that she was seeking to recover for her husband's "'severe bodily injuries' which in turn led to 'permanent and progressive injury' and his 'wrongful death.'" *Luckett*, 171 F.3d at 957. The plaintiff also incorporated the applicable wrongful death statute and any relief available under that statute. *Id.* The statute provided for recovery of "medical and burial expenses, the loss of consortium and the grief of the surviving spouse, the mental pain and anguish suffered by the decedent, pecuniary loss based on earning capacity, and grief and loss of companionship; it also permits an award of punitive damages." *Id.* The court determined that from the complaint alone, that the amount in controversy exceeded the

6

jurisdictional amount despite the absence of an allegation as to the amount of recoverable damages. *Id.*

In *Luckett*, the complaint included a demand for damages for "property, travel expenses, an emergency ambulance trip, a six day stay in the hospital, pain and suffering, humiliation, and her temporary inability to do housework after the hospitalization." *Luckett*, 171 F.3d at 298. Without more, this alone was sufficient to establish that the amount in controversy threshold had been met. *Id.*

Here, because Plaintiff made no monetary demand for damages in the initial Petition, Defendants set forth in the Notice of Removal the amount of damages they determined were placed in dispute and claimed by the Plaintiff class, based on the complaint's allegations and provided the Court with additional facts supporting their assertion that the amount in controversy exceeds $5 million. Defendants provided sufficient information in the Notice of Removal, whether under *Meridian*, *McPhail* or the JVCA to demonstrate that the amount in controversy requirement has been met.

When evaluating the face of Plaintiff's complaint alone, it is also apparent that the amount in controversy requirement has been met. Plaintiff alleged class-wide damage for over a decade for over 500 wells from which royalties for natural gas were underpaid. Similar cases have been brought with frequency (by Plaintiff's counsel) in the state and federal courts of Kansas, with settlements confirmed in amounts frequently exceeding $5 million. *See e.g., Eatinger v. BP America Production Co.*, Case No. 07-1266-EFM-KMH pending in the United States District Court for the District of Kansas, wherein a class settlement was approved that included a cash payment of $19 million; *Hershey v. ExxonMobil Oil Corp.*, Case No. 07-1300-JTM-KMH pending in the United States District Court for the District of Kansas, wherein a class

7

settlement was approved that included a cash payment of $54 million. The amount in controversy has been met as demonstrated by the face of Plaintiff's complaint alone and Plaintiff's counsel has not and cannot in good faith deny that fact to the Court.

### III. Defendants' Supplemental Information May Be Considered by the Court and Further Demonstrates that the Jurisdictional Amount Has Been Met.

Plaintiff states in his Motion to Remand that any attempt to supplement the Notice of Removal would be moot, citing an unpublished district court opinion from Oklahoma. This is simply not the law. Since filing the original motion to remand, both parties have had an opportunity to more fully evaluate the amount at issue for the putative class.

In *McPhail*, the court highlighted the difficulty a defendant faces when a plaintiff fails to demand a set amount of relief but defendants have an immovable deadline for the time to remove a matter to federal court. Citing *Meridian Security Ins. Co. v. Sadowski*, 441 F.3d 536, 540-43 (7th Cir. 2006), the *McPhail* court identified that in addition to any calculations based on the complaint's allegations, a party may reference the plaintiff's non-numerical allegations and settlement demands or request use of the discovery process prior to a court ruling on a motion to remand so that limited discovery may be completed for the purposes of establishing the amount in controversy. *McPhail*, 529 F.3d at 954. ("We also note that to the extent that a defendant must rely on the federal discovery process to produce this evidence . . . he may ask the court to wait to rule on the remand motion until limited discovery has been completed . . . ."). Here, the parties received a stay of this case while engaging in early settlement negotiations, which included limited discovery. This discovery supports the information outlined in the declaration attached hereto, which confirms that the amount in controversy exceeds $5 million.

*McPhail* also elaborates on the use of information from settlement discussions for the limited purposes of establishing the amount in controversy:

> Furthermore, a plaintiff's proposed settlement amount "is relevant evidence of the amount in controversy if it appears to reflect a reasonable estimate of the plaintiff's claim." *Cohn v. Petsmart, Inc.,* 281 F.3d 837, 840 (9th Cir.2002). Acknowledging that the use of a settlement offer would not be permissible at trial as evidence to establish " 'liability for or invalidity of the claim or its amount,' " the Ninth Circuit has held that it is permissible for a district court to consider settlement offers when deciding the jurisdictional question. *Id.* at n. 3 (quoting Fed.R.Evid. 408). We agree. The amount in controversy is not proof of the amount the plaintiff will recover. Rather, it is an estimate of the amount that will be put at issue in the course of the litigation. To this end, documents that demonstrate plaintiff's own estimation of its claim are a proper means of supporting the allegations in the notice of removal, even though they cannot be used to support the ultimate amount of liability.

*McPhail*, 529 F.3d at 956.

Indeed, here, as outlined in the attached Declaration, the calculations prepared by Plaintiff's counsel, based on the information requested by Plaintiff to prepare for mediation and from which Plaintiff's settlement demands were formulated, show that the amount in controversy greatly exceeds the jurisdictional threshold. *See Exhibit A*, ¶¶ 9-10. As part of the mediation process DCBO agreed to and did provide Plaintiff's counsel with documentation necessary for Plaintiff's counsel to fully analyze the liability and damage issues involved. Plaintiff's counsel and/or his expert arrived at a damage figure in excess of $21.5 million, including interest. The methodology and spreadsheets setting forth this information laid out Plaintiff's calculation of damages, including their claim for underpaid royalty of $10,427,969.01 (plus interest of $5,362,997.22), their Conservation fee claim of $97,816.33 (plus interest of $42,354.30) and their shrinkage claim of $3,703,674.13 (plus interest of $1,942,726.45). *See Declaration of Charles E. Henderson, Exhibit A*). The sum of the claims of the Plaintiff class as computed by Plaintiff's counsel, without interest, is $14,229,459, which is within 2% of the back of the envelope figure stated above.

While these calculations are not proof of what Plaintiff might recover through the course of this litigation, it does demonstrate Plaintiff's own estimation of his claims in light of the

discovery that has occurred about the nature and amount of Plaintiff's claims. Plaintiff estimates damages of nearly $15 million without interest, three times the jurisdictional requirement. Counsel confirmed to the Court during status conference that settlement demands at mediation did not dip below the jurisdictional threshold for CAFA. The amount in controversy in this case exceeds $5 million. The parties are diverse. This case meets the requirements for this Court to exercise jurisdiction pursuant to 28 U.S.C. § 1332(d). Should any remaining doubt exist, the Court can conduct a hearing under Rule 12(b)(1) at which point the parties can present evidence regarding the amount in controversy and jurisdiction. *See McPhail*, 529 F.3d at 954.

### IV. The Court Should Reject Plaintiff's Unfounded Attempts to Avoid Federal Jurisdiction.

After setting out in the Notice of Removal the amount in controversy along with the underlying facts to support this amount, and upon review of the face of the Complaint, it is clear that the amount in controversy has been met. In *McPhail v. Deere & Co.*, 529 F.3d 947, 955 (10th Cir. 2008), the court explained that "a plaintiff cannot avoid removal merely by declining to allege the jurisdictional amount." Declining to allege the jurisdictional amount or otherwise blurring the jurisdictional amount for the purpose of forum shopping has repeatedly been rejected by the courts when a plaintiff seeks remand. Plaintiffs are not permitted to avoid federal jurisdiction while still seeking to recover more than the jurisdictional threshold for diversity jurisdiction – they simply cannot have it both ways.

Let there be no doubt - that is exactly what Plaintiff's counsel in this case is trying to do. This is not Plaintiff's counsel's first royalty-owner class action lawsuit. In fact Plaintiff's counsel has made somewhat of a cottage industry of bringing class action claims on behalf of oil and gas royalty interest owners, and has consistently sought to avoid Federal courts. To do so, Plaintiff's counsel has set forth contingent damage demands or, as here, refused to set forth any amount as a

10

demand. In one such instance Plaintiff's counsel filed two separate class action lawsuits in the same Kansas state court against the same defendants alleging different breaches of the same oil and gas leases on behalf of the same class of royalty owners. In "*Eatinger I*" (*Eatinger v. BP America Production Co.*, 524 F. Supp. 2d 1342 (D. Kan. 2007)), the class claims involved an alleged underpayment of royalties due to "self-dealing", the use of affiliate pricing to determine royalties. *Id.* at 1343. In *Eatinger I* the Plaintiff's state court petition stated with respect to the amount in controversy that:

> Plaintiff does not claim individually any damages in excess of $75,000 (including any damages or attorneys fees, prorated), and do not make a claim under any federal law. The entire class-wide damages may be less than $ 5 million.

*Id.* at 1348.

BP subsequently removed *Eatinger I* to Federal Court under the Class Action Fairness Act and diversity jurisdiction. Notwithstanding the above allegation in the Petition, BP did its own calculation of the damages being sought by the class, based on the claims in the Petition and indicated in the Notice of Removal that:

> [B]ased on plaintiff Eatinger's proposed class definition, [BP] has calculated the minimum [3] amount of total royalty payments alleged to be in controversy to be at least $ 693,000,000. Therefore, unless plaintiff Eatinger is claiming less than a .7215009% underpayment of royalty on behalf of the proposed class, the amount in controversy exceeds $ 5,000,000.

*Id.* at 1344.

In attempting to remand *Eatinger I*, plaintiff's counsel "simply pled that the claims 'may' be less than the required amount amount-in-controversy." *Id.* at 1348. He did not concretely claim less than the jurisdictional amount and he refused to stipulate to an amount in controversy below the jurisdictional threshold for the named Plaintiff or for the putative class. *Id.* at 1343. In finding remand was improper in *Eatinger I*, the court noted:

11

> [I]t appears that plaintiff is now attempting to have it both ways, in that it would like to remain in state court by pleading an amount below the requisite amount in controversy individually, while leaving the door open for the class to seek damages above the jurisdictional amount. This indecisive and ambiguous language is not sufficient to close the door to the federal courts.

*Id.* at 1348.

Some four months after *Eatinger I* was filed, and while the motion to remand in *Eatinger I* was pending, the same counsel who filed *Eatinger I* (and this case) filed a second class action claim ("*Eatinger II*") in the same Kansas state court on behalf of the same Plaintiff and Plaintiff class and against the same defendants. *Eatinger v. BP America Production Co.*, 2008 WL 4163250 (D. Kan. Aug. 26, 2008). *Eatinger II* involved claims that BP had breached its oil and gas leases by taking improper deductions, as opposed to the use of affiliate pricing. The Petition in *Eatinger II* replicated the claim in *Eatinger I* "that class-wide damages for unpaid royalties "may be less than $5 million." *Id*. After the Federal court issued an order denying the Motion to Remand in *Eatinger I* Plaintiff's counsel filed a First Amended Petition in *Eatinger II*. The Court identified that the only difference between the original and first amended petition was that:

> Eatinger replaced the "may be less than $5 million" language with:
>
> Class-wide, Plaintiff does not seek or claim, based on presently available information, any right to recover in excess of $5 million. Should that information change, Plaintiff, on behalf of the class, will move for leave to amend to seek in excess of $5 million and consent to removal of this class action under the Class Action Fairness Act (since there is no 1 year removal time limit on CAFA diversity removal).

*Id.* at *1. Defendant BP removed the second action (as amended) to Federal court and then moved to consolidate the cases. Plaintiff's counsel again sought remand. The Plaintiff's attempts to work around federal jurisdiction were similarly inadequate. *Id.* Merely stating that

the plaintiff does not presently seek an amount in excess of the jurisdictional threshold, but will amend should it decide to do so is not a waiver of any right to recovery nor sufficient to provide the court with information that the amount in controversy is less than the jurisdictional amount. *Id.* at *2. In ruling on the motion to consolidate, the court also noted that the two cases, though they did contain minor differences, were clearly "closely related, triggering the application of the single-action rule, which is designed to 'protect the defendant from the necessity of litigating similar claims in separate actions.'" *Id.* at *3 (citing *Oxbow Energy v. Koch Industr.*, 686 F. Supp. 278, 282 (D. Kan. 1988)). The only rationale the court could discern for bringing two separate actions initially was the Plaintiff's "desire to evade both the single-action requirement and the jurisdictional standards of CAFA." *Id.* Indeed, despite Plaintiff's counsel's protestations that the amounts in controversy in both of the *Eatinger* cases "may" be less than the jurisdictional amount, the matter settled with a $19 million cash payment.

Plaintiff's counsel knows exactly how to plead his claim if he wants to preclude removal to Federal Court and avoid diversity jurisdiction and CAFA, as anyone who reads *Eatinger I* and *Eatinger II* knows. Notwithstanding that, Plaintiff's counsel did not state in the Petition filed in this matter that the claims involved were less than the jurisdictional threshold for diversity and CAFA, or even that the claims "may be" less than that amount. As the Court noted in *Eatinger II*:

> Certainly, as Eatinger stresses, the plaintiff is the "master" of his complaint. *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446, 449 (7th Cir. 2005). But, where he uses that mastery to create mere ambiguity and evasion, he cannot be heard to complain too loudly. The court has previously noted, in *Eatinger I*, that the plaintiff's "indecisive and ambiguous language is not sufficient to close the door to the federal courts."

*Id.* at *2.

Here, Plaintiff's counsel has simply refused to state the amount in controversy in the Petition in an effort to avoid federal jurisdiction, and then in response to the Removal Notice has not attempted to stipulate or state that the damages sought by the Plaintiff class are below the jurisdictional threshold, or to provide any calculation to the Court to establish that his damage claim is in fact below the jurisdictional limit, but rather he has only argued that Defendants have not done enough to establish the amount in controversy.

As set forth above, the Notice of Removal and the face of the Complaint demonstrate that the amount in controversy exceeds $5 million.  Faced with a Petition that contained no damage amount the Defendants were placed in a position of trying to determine what Plaintiff was seeking to recover.  Based upon the allegations of the Petition it was possible to come up with a preliminary, "back of the envelope" damage analysis using total royalties paid, adjusting for the applicable contract rate, and further adjusting for the lost shrinkage amount.  That analysis generated a damage figure of more than $14.5 million. *See Declaration of Charles E. Henderson*, *Exhibit A*, ¶¶5-6.  Defendants continued to gather data and did a formal economic analysis of the damage claim. This analysis (*id*. at Exhibit A thereto) determined that the damages claimed by Plaintiff class amounted to $11,866,260.25. If those "damages" which occurred outside of the five-year period before the date of the filing of the Plaintiff's Petition are excluded the total damages claimed by Plaintiff class would be $8,224,798.62.  *Id*.  In the Notice of Removal, Defendants alleged that the damages claimed were "at least $8.2 million".  This was not a number that was pulled out of thin air, it was in fact a very conservative number based on the analysis shown above.

The Notice of Removal and the statement contained therein that the amount in controversy is "at least $8.2 million" alone clearly satisfies the requirement for removal

14

jurisdiction.  In *McPhail*, the 10th Circuit acknowledged that a defendant may "rely on an estimate of the potential damages from the allegations in the complaint" alone to establish federal jurisdiction.  *McPhail*, 529 F.3d at 956.

As noted in Section III, *supra,* the amount in controversy requirement can also be satisfied "by reference to plaintiff's informal estimates or settlement demands." *Id*. at 954.  Such a rule is consistent with not allowing Plaintiff's counsel to "have it both ways" as the judge noted in *Eatinger I*.  524 F. Supp. 2d at 1348.  Here Plaintiff's counsel's own damage calculations show in reality the amount in dispute is almost $15 million.

## CONCLUSION

The initial notice of removal and a review of the face of the Complaint, coupled with the discovery conducted since the start of this suit, are more than sufficient to meet the removal requirements.  As the *McPhail* court stated, once the facts supporting federal jurisdiction are presented the case will remain in federal court unless it is legally certain that less than the jurisdictional amount is in controversy. 529 F.3d at 954.  Plaintiff's counsel's attempts to avoid federal jurisdiction should be rejected.  The facts set forth herein and the attachments hereto clearly meet the requirements of *McPhail*.  This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(d) and Plaintiff's motion to remand should be denied.

Defendants properly removed this matter to federal court pursuant to this Court's ability to exercise jurisdiction under 28 U.S.C. § 1332(d). Accordingly, this Court should deny Plaintiff's Motion to Remand.

Submitted this 1st day of May, 2013.

Respectfully submitted by:

Morris, Laing, Evans, Brock & Kennedy, Chtd.

/s/ Julia Gilmore Gaughan
Jeffery L. Carmichael, KS #11085
Will B. Wohlford, KS #21773
300 N. Mead, Suite 200
Wichita, KS  67202
(316) 262-2671
jcarmichael@morrislaing.com
wwohlford@morrislaing.com

and

Julia Gilmore Gaughan, KS #23919
800 SW Jackson St., Suite 1310
Topeka, KS 66612-1216
(785) 232-2662  Fax: (785) 232-9983
jgaughan@morrislaing.com

*Attorneys for Dart Cherokee Basin Operating Company, LLC and Cherokee Basin Pipeline, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on this 1st day of May, 2013, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send notice of electronic filing to all counsel who have registered for receipt of the documents filed in this matter.

/s/ Julia Gilmore Gaughan