# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| BRANDON W. OWENS, ) | |
| individually and on behalf of all others ) | |
| similarly situated, ) | |
|  ) | |
| Plaintiffs, ) | Case No. 12-4157-JAR-JPO |
|  ) | |
| v. ) | |
|  ) | |
| DART CHEROKEE BASIN ) | |
| OPERATING CO. LLC, and ) | |
| CHEROKEE BASIN PIPELINE, LLC, ) | |
|  ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

This putative royalty owners class action suit was removed by Defendants Dart Cherokee Basin Operating Company, LLC ("DCBO") and Cherokee Basin Pipeline, LLC ("CBPL") to this Court on December 5, 2012 (Doc. 1). This matter is before the Court on Plaintiff's Motion to Remand (Doc. 12). The matter is fully briefed and the Court is ready to make its decision. For the reasons explained in detail below, the Court grants Plaintiff's motion and remands the case to the District Court of Wilson County, Kansas.

### I.      Background

On October 30, 2012, Plaintiff Brandon W. Owens filed a class action Petition in the District Court of Wilson County, Kansas. In the state court Petition, Plaintiff seeks to represent a class of royalty owners who were underpaid royalties from DCBO or CBPL working interest Kansas wells from January 1, 2002 to the date of the Class Notice. Plaintiff alleges breach of contract and unjust enrichment claims and seeks compensatory damages, costs, and such further

relief as the court deems just and proper. The Petition does not state a specific amount as damages.

On December 5, 2012, Defendants removed the state court action to this Court, asserting jurisdiction pursuant to 28 U.S.C. § 1332(d), commonly known as the Class Action Fairness Act of 2005 ("CAFA"). As grounds for removal, Defendants contend the amount in controversy is in excess of $8.2 million. On January 2, 2013, prior to any response being filed to the motion to remand, all further proceedings in the case were stayed pending mediation between the parties; mediation held on April 4, 2013, was unsuccessful, and the Court directed the parties to resume briefing on the pending motion.[1]

## II.     Discussion

To establish federal jurisdiction under CAFA, three elements are required. First, minimal diversity of citizenship must exist between the parties, meaning at least one plaintiff and one defendant must be citizens of different states. Second, the proposed class must have at least one hundred members in the aggregate. And third, the amount in controversy must exceed $5 million, exclusive of interest and costs.[2] For removal to be proper, the defendant must set forth facts supporting the assertion that the amount in controversy is satisfied.[3] In making this showing, the defendant must support the amount in controversy with factual evidence rather than mere assumption or speculation.[4] The parties are in dispute only about the third element—the

---

[1] Doc. 20. The Court also denied without prejudice to renew Defendants' pending Motions to Dismiss.

[2] 28 U.S.C. § 1332(d).

[3] *Frederick v. Hartford Underwriters Ins. Co.*, 683 F.3d 1242, 1247 (10th Cir. 2012).

[4] *Martin v. Franklin Capital Corp.*, 251 F.3d 1284, 1290 (10th Cir. 2001).

amount in controversy.

In determining the amount in controversy for an action removed pursuant to CAFA, the question is not how much the plaintiff will recover, but "an estimate of the amount that will be put at issue in the course of the litigation."[5] The amount in controversy is ordinarily determined by the allegations of the complaint, or, where they are not dispositive, by the allegations in the notice of removal.[6] If the jurisdictional amount is not shown by the allegations of the complaint, "[t]he burden is on the party requesting removal to set forth, in the notice of removal itself, the 'underlying facts supporting [the] assertion that the amount in controversy exceeds [$75,000].'"[7] In other words, the amount in controversy must be affirmatively established on the face of either the petition or notice of removal.[8] The Court narrowly construes removal statutes,[9] and all doubts must be resolved in favor of remand.[10]

In *McPhail v. Deere & Co.*,[11] the Tenth Circuit outlined several methods that a removing defendant may use to satisfy its burden of proving jurisdictional facts by a preponderance of the evidence. A plaintiff "cannot avoid removal merely by declining to allege the jurisdictional amount," but in the absence of an explicit demand for more than the jurisdictional amount,

---

[5]*Frederick*, 683 F.3d at 1245.

[6]*Martin*, 251 F.3d at 1290; *Laughlin v. Kmart Corp.*, 50 F.3d 871, 873 (10th Cir. 1995).

[7]*Laughlin*, 50 F.3d at 873 (quotation omitted).

[8]*Id*.

[9]*Martin*, 251 F. 3d at 1289.

[10]*Fajen v. Found. Reserve Ins. Co.*, 683 F.2d 331, 333 (10th Cir. 1982); *Ortiz v. Biscanin*, 190 F. Supp. 2d 1237, 1241 (D. Kan. 2002).

[11]529 F.3d 947 (10th Cir. 2008).

3

defendant must show how much is in controversy through other means.[12]  In other words, "the defendant must affirmatively establish jurisdiction by proving jurisdictional facts that made it possible that $75,000 was in play."[13]  A defendant may accomplish this through interrogatories obtained in state court prior to the removal, or affidavits or other evidence submitted to the federal court.[14]  In *Frederick v. Hartford Underwriters Ins. Co.*, the Tenth Circuit reaffirmed *McPhail* and extended the rationale to class actions under CAFA.[15]  In that case, the Tenth Circuit definitively joined a number of Circuits in holding that a defendant seeking to remove under CAFA must show that the amount in controversy exceeds $5 million by a preponderance of the evidence.[16]

Because the Petition does not make a specific monetary demand for damages, the Court looks to the Notice of Removal.  Defendants set forth, in relevant part:

> 9.  Plaintiff's Petition does not state a specific amount as damages. It does, however, pray for payment of royalties and interest claimed to be due to royalty owners who were paid royalties with regard to gas produced from wells located in Kansas in which DCBO has owned any working interest, for the period from January 1, 2002 to the present.

---

[12] *Id*. at 955.

[13] *Id*.

[14] *Id*. at 956.  *Accord Frederick v. Hartford Underwriters Ins. Co.*, 683 F.3d 1242, 1247 (10th Cir. 2012) (explaining defendants may meet their evidentiary burden to show the jurisdictional amount in controversy, "by contentions, interrogatories or admissions in state court; by calculation from the complaint's allegations[;] by reference to the plaintiff's informal estimates or settlement demands[;] or by introducing evidence, in the form of affidavits from the defendant's employees or experts, about how much it would cost to satisfy the plaintiff's demands").

[15] 683 F.3d 1242, 1246-47 (10th Cir. 2012).

[16] *Id*. at 1246-47.

4

> 10. This matter involves approximately 700 wells that DCBO currently operates in Kansas. The purported class consists of royalty owners that own an interest in the wells in which DCBO has a working interest in Kansas. There are approximately 400 royalty owners with interests in the 700 wells at issue.
> . . .
>
> 14. DCBO has undertaken to quantify the amount of additional royalties that would be owed if all or substantially all of the adjustments to royalties advanced by Plaintiff were found to be required to be made.
>
> 15. Based upon this calculation of Plaintiff's putative class claims, the amount of additional royalty sought is in excess of $8.2 million.[17]

Defendants do not offer any documentation or affidavits explaining how they reached this calculation.

In their response to Plaintiff's motion to remand, Defendants offer the Declaration of Charles E. Henderson, Vice President of Legal Affairs and General Counsel for DCBO, and Manager of CBPL, which further outlines the calculations initially conducted, those that now exist based on limited informal discovery, and those performed by Plaintiff relating to the limited discovery.[18] According to Henderson, these calculations show that Plaintiff's claims for the entire class period far exceed the jurisdictional threshold. Henderson explains that, upon service of the Petition, which did not specify the amount in dispute, he undertook to quantify the damages at issue based on the allegations in the Petition, based on the claims, the class period and the number of leases. Assuming that the royalty paid to the Plaintiff class should have been calculated on 100% of the CBPL proceeds and not 75%, using a "back of the envelope"

---

[17]Doc. 1.

[18]Doc. 23, Ex. 1.

calculation, the class was underpaid by approximately $11 million.  Using the same back of the envelope analysis, the claim for shrinkage is approximately $3.52 million.  Subsequently, but before filing the Notice of Removal, DCBO located and analyzed the actual production and sales data for the period in question and ran a formal economic analysis of the potential damages, assuming the allegations in the Petition are correct.  Based on those assumptions, it was determined that the amount in controversy for the five year period prior to the filing of the Petition, which Defendants believe is the applicable period for Statute of Limitations purposes, was $8,224,798.62, and $11.86 million for the entire ten-year period claimed by Plaintiff class. Henderson attaches a spreadsheet setting forth this analysis.[19]  Henderson also states that at the time of the mediation conducted April 4, 2013, Plaintiff's counsel and/or his expert witness had arrived at a damage figure in excess of $21.5 million, which included interest of $7.348 million.  After deducting interest, the sum of the claims is over $14 million, almost three times the threshold jurisdictional amount.[20]  Henderson notes that the $14 million figure is within 2% of the back of the envelope figures set forth above.

     Plaintiff offers no affidavit, declaration or other evidence challenging Defendants' calculation, but instead argues that Defendants cannot meet their burden to show that it is more likely than not that the amount in controversy exceeds $5 million.  Plaintiff asserts that Defendants submitted no evidence with their unsworn Notice of Removal, only a bare allegation that the amount in controversy exceeds the statutory requirement.  Thus, Plaintiff argues, Defendants' Notice of Removal is deficient as a matter of law, and cannot be cured by attaching

---

[19]*Id*. at Ex. A.

[20]*Id*. at Ex. C.

Henderson's Declaration to their response to Plaintiff's motion to remand. Plaintiff also takes issue with Defendants' use of the mediation to belatedly develop evidence to support its assertion of the amount in controversy, and in fact, DCBO had the information at the time of removal, but failed to offer it to prove the amount in controversy.

The Court finds several CAFA cases decided after *Frederick* to be informative. On remand from the Tenth Circuit, the district court in *Frederick* held that the defendant insurance company met its evidentiary burden under CAFA by submitting with its Notice of Removal the affidavit of its Director for Business Compliance, who attested to having overseen the extraction of data concerning relevant insurance claims and using it to calculate the company's potential liability.[21] The district court held that the defendant had "provided sufficient evidence, in the form of an affidavit, that Plaintiff's alleged actual damages are $2,960,998, and that an equal amount of punitive damages is possible in this case."[22]

Likewise, in *Ezell v. Graco Children's Products Inc.*, the court held that defendants' affidavit detailing their calculation of the amount in controversy was sufficient to show by a preponderance of the evidence that the amount exceeded $5 million.[23] In that case, plaintiffs brought a class action against manufacturers for sale of defective child booster seats.[24] Defendants submitted an affidavit in support of their Notice of Removal showing that:

> 15,452 people with Oklahoma addresses registered booster seats within the time frame set out in the state court Petition.

---

[21]*Frederick*, No. 11-cv-2306-WJM-KLM, 2012 WL 4511242, at *2 (D. Colo. Oct. 1, 2012).

[22]*Id*. at *4.

[23]No. Civ-12-787-C, 2012 WL 4355966, at *1 (W.D. Okla. Sept. 24, 2012).

[24]*Id*.

7

> Defendants further develop their proof by setting forth the number of booster seats sold, 12, 200,000 and the portion of that number registered, 1,600,000. Applying this same ratio of registration seats sold (13%), it is reasonable to infer that approximately 118,500 seats were sold in Oklahoma. Plaintiffs seek recovery of the replacement cost of the seat. The parties agree that a blended price is . . . $33.99.[25]

The court held that this evidence was sufficient to show that the compensatory damages could total over $3.9 million, which, when added to the potential punitive damages, would reach the necessary amount.[26]

And, in *Parks v. USAA*, plaintiffs brought a class action against defendant insurance companies alleging they violated Colorado law by arbitrarily reducing claims, improperly denying claims, conducting insufficient utilization reviews, and using incorrect schedules to calculate the value of claims.[27] In their Notice of Removal, the defendants offered as value of the contested claims the declaration of a Staff Claims Advisor asserting that during the three years prior to the filing of the complaint, there were over 500 individuals who would qualify for the plaintiff class with claims totaling over $2.5 million.[28] The declaration states that the claims advisor has "knowledge and access to relevant corporate records and data systems" and that she has "undertaken an analysis of the business records and data systems" in order to arrive at the figures she provides.[29] Further, defendants offered several declarations asserting that the amount

---

[25]*Id.*

[26]*Id.*

[27]No. 12-cv-2016-PAB-MJW, 2012 WL 5290170, at *1 (D. Colo. Oct. 26, 2012).

[28]*Id.*

[29]*Id.*

8

of attorney's fees will likely reach $1 million, and concludes that doubling the value of unpaid claims and adding interest and attorney's fees demonstrates that the amount in controversy exceeds $5 million, before the possibility of exemplary damages is taken into account.[30] The court held that, although the affidavit was not as detailed as those submitted in *Frederick* and *Ezell* in its description of the method used to derive the number of claimants and the value of the claims at issue, it was sufficient to meet defendant's evidentiary burden under CAFA, when plaintiff had not offered any facts showing that an award of $5 million or more is legally impossible.[31]

    By contrast, in this case, Defendants do not submit any supporting documentation, affidavit or declaration as evidence of the amount of compensatory damages, even though they concede that they had the actual production and sales data at the time of the Notice of Removal, going so far as to run a "formal economic analysis of potential damages."  Instead, Defendants argue, the amount in controversy can be demonstrated by the allegations in the Petition alone, and they have made their calculations from those allegations, along with additional facts. Defendants cite in support the Tenth Circuit's decision in *McPhail*, in which they contend the court held the allegations of the complaint alone was sufficient to find the amount in controversy exceeded the jurisdictional threshold for diversity jurisdiction.[32]  Defendants' reliance on *McPhail* is misplaced.  In that case, plaintiff brought a wrongful death action against defendant; her complaint cited to the Oklahoma wrongful death statute, and requested "all relief enumerated

---

[30]*Id.*

[31]*Id.* at *3.

[32]529 F.3d at 957.

9

therein."[33] That statute provided recovery for several categories of compensatory damages alleged in the complaint, as well as punitive damages up to $100,000.[34] The court held that, "[g]iven these allegations and the nature of the damages sought, the complaint on its face *may* be sufficient by itself to support removal."[35] The court declined to decide the question based on the complaint alone, however, because plaintiff had incorporated correspondence between counsel in the notice of removal that demonstrated her counsel believed the amount in controversy "very well may be" in excess of $75,000.

In this case, Plaintiff's Petition does not include a claim based on statutory liability or a claim for punitive damages, and the jurisdictional amount is not readily apparent from the face of the Petition. Nor does Plaintiff attempt to limit the amount in controversy to less than the jurisdictional amount. Although Defendants state in the Notice of Removal that they have "undertaken to quantify the amount of additional royalties that would be owed," Defendants fail to incorporate any evidence supporting this calculation in the Notice of Removal, such as an economic analysis of the amount in controversy or settlement estimates. Accordingly, in the absence of such evidence, the general and conclusory allegations of the Petition and Notice of Removal do not establish by a preponderance of the evidence that the amount in controversy exceeds $5 million.[36]

---

[33]*Id*.

[34]*Id.*

[35]*Id*. (emphasis added).

[36]*See Freebird, Inc. v. Merit Energy Co.*, 597 F. Supp. 2d 1245, 1249 (D. Kan. 2009) (citing *Coca-Cola Bottling of Emporia, Inc. v. South Beach Bev. Co., Inc.*, 198 F. Supp. 2d 1280, 1285-86 (D. Kan. 2002)) (holding that an affidavit including no underlying data, facts, figures or calculations in support" of blanket statement was insufficient to satisfy the removing defendant's burden of proving the amount in controversy).

Thus, the Court turns to whether Defendants can rely on factual allegations not contained in the Notice of Removal, subsequently submitted with their response as "additional support" in an attempt to meet their jurisdictional burden.  The Tenth Circuit has consistently held that reference to factual allegations or evidence outside of the petition and notice of removal is not permitted to determine the amount in controversy.[37]  Defendants are correct that in *McPhail*, the Circuit appears to have carved out a limited exception to this rule, by holding that a party may seek limited discovery to determine the amount in controversy.[38]  The Circuit did not give any guidance on when it is appropriate to grant or deny a request, however, and in that case, the court appears to have contemplated a situation in which the defendant had no information from which to establish the amount of damages.[39]

Here, Defendant has not requested leave to conduct discovery on the amount in controversy.  Indeed, such discovery is not justified, as Defendants concede in their response and Henderson's Declaration that they were aware of additional facts and data at the time they removed the case to federal court, but did not allege all of these facts in the Notice of Removal.  And, although the *McPhail* court indicated that evidence of settlement proposals and estimates is permitted as a basis for establishing the amount in controversy, it is so only when those facts

---

[37]*See, e.g.*, *Laughlin*, 50 F.3d at 873; *Martin*, 251 F.3d at 1291, n.4; *Okla. Farm Bureau Mut. Ins. Co. v. JSSJ Corp.*, 149 F. App'x 775 (10th Cir. 2005).

[38]529 F.3d at 954.

[39]*Id*. at 953; *Helvey v. Am. Nat. Life Ins. Co of Tex.*, No. 12-1109-MLB, 2012 WL 2149676, at 3, n.1 (D. Kan. June 13, 2012) (citing *McPhail*, 529 F.3d at 954) (granting removing party's request for limited discovery on past and future medical bills and attorney fees).

were incorporated in the notice of removal.[40]  Although Plaintiff's Petition is silent on the jurisdictional amount, it has enough detail regarding the basis of the claims regarding the underpayment of royalties to enable Defendants to use their data to calculate an amount in controversy, albeit data and/or evidence they did not include in their Notice of Removal.  Even assuming that Defendants can now establish the amount in controversy exceeds $5 million, they were obligated to allege all necessary jurisdictional facts in the notice of removal.[41]

The jurisdictional facts alleged in the Petition and Notice of Removal do not show by a preponderance of the evidence that the amount in controversy exceeds $5 million.  Guided by the strong presumption against removal, this case is remanded to state court for lack of subject matter jurisdiction.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Remand (Doc. 12) is GRANTED.  The Clerk of the Court is directed to remand this case to the District Court of Wilson County, Kansas.

**IT IS SO ORDERED.**

Dated: May 21, 2013

                                          S/ Julie A. Robinson
                                          JULIE A. ROBINSON
                                          UNITED STATES DISTRICT JUDGE

---

[40] *McPhail*, 529 F.3d at 956 (permitting district courts to consider settlement offers in assessing the jurisdictional amount and concluding that, "[t]o this end, documents that demonstrate plaintiff's own estimation of its claim are a proper means of supporting the allegation in the notice of removal").

[41] *See Freebird,* 597 F. Supp. 2d at 1249; *Benefits Tech., LLC v. Stanley*, No. 10-CV-0561-CVE-FHM, 2010 WL 4736297, at *5 (W.D. Okla. Nov. 16, 2010).  Although Defendants do not move to amend their Notice of Removal, it does not appear that the Tenth Circuit would permit such amendment to provide an economic analysis of the amount in controversy that was absent in the notice of removal.  *Id*. (citing cases).