IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| BRANDON W. OWENS, )<br>individually and on behalf of all others )<br>similarly situated, )<br>　　　　　　　　　　　　　　　　　)<br>　　　　　　Plaintiffs, )<br>　　　　　　　　　　　　　　　　　)<br>v. )<br>　　　　　　　　　　　　　　　　　)<br>DART CHEROKEE BASIN )<br>OPERATING CO. LLC, and )<br>CHEROKEE BASIN PIPELINE, LLC, )<br>　　　　　　　　　　　　　　　　　)<br>　　　　　　Defendants. )<br>_____) | Case No. 12-4157-JAR-JPO |

## MEMORANDUM AND ORDER

This putative royalty owners class action suit was removed by Defendants Dart Cherokee Basin Operating Company, LLC ("Dart") and Cherokee Basin Pipeline, LLC to this Court on December 5, 2012. This matter is before the Court on Plaintiff's second Motion to Remand (Doc. 51), asserting that this Court lacks subject matter jurisdiction under the Class Action Fairness Act ("CAFA"). The matter is fully briefed and the Court is ready to make its decision. For the reasons explained in detail below, the Court denies Plaintiff's motion.

**I.      Procedural History**

On October 30, 2012, Owens filed this suit in the District Court of Wilson County, Kansas asserting claims on behalf of himself and all other similarly situated oil and gas lessors. More specifically, this putative class is comprised of a group of mineral owners who formed lease agreements with various production companies, exchanging "working interests" to explore for and produce oil and gas from their lands for "royalty interests" in the oil and gas yields. Owens asserts that Dart underpaid royalty owners by taking numerous deductions before the gas

products were in marketable condition, and by deceptively deducting a "conservation fee" from Plaintiffs' payments. As a result, Owens alleges that Dart breached its lease agreement with each member of the putative class by failing "to produce and market at its sole cost the gas by placing the gas in a marketable condition." Plaintiff's Petition does not include any allegation of or specify the total amount of damages sought.

Defendants timely filed a Notice of Removal pursuant to CAFA. Defendants' Notice of Removal alleged, among other things, that Owen's putative class claims exceed $8.2 million. In response, Owens filed his first Motion to Remand, where he claimed that Defendants failed to satisfy their burden of establishing the requisite amount in controversy by a preponderance of the evidence in the Notice of Removal. Two days after filing his Motion to Remand, Owens filed an unopposed motion to stay the case pending mediation. This Court granted Owens' motion to stay and the parties engaged in mediation. During this mediation, Owens's expert, Daniel Reineke, determined that the damages available exceeded $14.2 million without interest, based on the analysis of the three claims alleged in the Petition. Defendants rejected Owens's demand and asserted that approximately 62% of the actionable leases expressly authorized Defendants' conduct and the "deductions" Plaintiff alleged constitute breaches of those leases.

Following mediation, Defendants timely filed their First Remand Opposition containing evidence of Owens's $14.2 million damage calculation. Owens replied, arguing that Defendants' submission of evidence was improper under Tenth Circuit precedent. Owens did not contest the alleged amount in controversy at that time. In keeping with Tenth Circuit precedent, this Court held that Defendants were required in their notice of removal to show

sufficient facts to establish the amount in controversy, and granted Owens's Motion to Remand.[1]

The Tenth Circuit Court of Appeals denied Defendants' Petition for Leave to Appeal. Defendants' Petition for Rehearing *En Banc* was subsequently denied by a 4-to-4 decision, with Judge Hartz entering a detailed dissent analyzing the merits. Defendants then filed a Petition for Writ of Certiorari with the United States Supreme Court, which was granted.

On December 15, 2014, the Supreme Court found that the Tenth Circuit abused its discretion by failing to grant Defendants' petition and that the statutory requirements for removal under CAFA do not require a defendant to present evidence establishing the amount in controversy with the notice of removal.[2] The Court vacated and remanded the Tenth Circuit's Order denying leave to appeal.[3] Pursuant to the Order of the Tenth Circuit dated February 23, 2015, this Court vacated its May 21, 2013 Order remanding the case and reopened these proceedings. The Court then conducted a status conference with the parties, where Owens indicated his intent to challenge whether the amount in controversy requirement has been met under CAFA. The parties agreed that this jurisdictional question should be resolved before proceeding to discovery, and a briefing schedule was set.

## II.     Standard

Federal courts are required to remand a case to state court "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction."[4] To avoid remand,

---

[1] Doc. 28.

[2] *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 551 (2014).

[3] *Id.*

[4] 28 U.S.C. § 1447(c).

defendants must show that the action satisfies the requirements for federal jurisdiction.[5] Because federal courts "are courts of limited jurisdiction, there is typically a presumption against federal jurisdiction."[6] However, there is no "antiremoval presumption" for cases arising under CAFA.[7] In fact, "Congress enacted [CAFA] to facilitate adjudication of certain class actions in federal court."[8]

Remand is generally improper if the defendant properly removed a case to federal court that the plaintiff could have originally filed in federal court.[9] As courts of limited jurisdiction, federal courts must have a statutory or constitutional basis to exercise jurisdiction over any controversy.[10] Under CAFA, federal district courts have original jurisdiction "to hear a class action if the class has more than 100 members, the parties are minimally diverse, and the matter in controversy exceeds the sum or value of $5,000,000."[11]

If the plaintiff does not assert an amount in controversy in his complaint, the defendants may assert "a plausible allegation that the amount in controversy exceeds the jurisdictional

---

[5]*See Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002) ("The burden of establishing subject-matter jurisdiction is on the party asserting jurisdiction.") (citation omitted).

[6]*Frederick & Warinner v. Lundgren*, 962 F. Supp. 1580, 1582 (D. Kan. 1997) (citing *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974)).

[7]*Dart Cherokee*, 135 S. Ct. at 554.

[8]*Id.*

[9]*Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987).

[10]*Montoya*, 296 F.3d at 955; *see also United States v. Hardage*, 58 F.3d 569, 574 (10th Cir. 1995) ("Federal court have limited jurisdiction, and they are not omnipotent. They draw their jurisdiction from the power specifically granted by Congress, and the Constitution, Article III, Section 2, Clause 1." (internal quotation omitted)).

[11]28 U.S.C. § 1332(d)(2), (d)(5)(B); *Standard Fire Ins. Co. v. Knowles*, 133 S. Ct. 1345, 1348 (2013).

threshold."[12] In *Dart Cherokee*, the Supreme Court held that "when a defendant seeks federal-court adjudication, the defendant's amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court."[13] In other words, all that is required in the notice of removal is a "short and plain statement of the grounds for removal," including "a plausible allegation that the amount in controversy exceeds the jurisdictional threshold."[14] "In the event that the plaintiff does contest the defendant's allegations, both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied."[15]

Proof to a legal certainty is not required, but the Court may use discovery to determine whether the amount in controversy exceeds the jurisdictional threshold.[16] When a dispute arises, the Court "must make findings of jurisdictional fact to which the preponderance standard applies."[17] To satisfy the preponderance standard, a party must show a "reasonable probability that the controversy exceeds $5 million."[18] "Furthermore, a plaintiff's proposed settlement amount 'is relevant evidence of the amount in controversy if it appears to reflect a reasonable

---

[12] 28 U.S.C. § 1446(c)(2)(A); *Dart Cherokee*, 135 S. Ct. at 554.

[13] 135 S. Ct. at 553.

[14] *Id.* at 551, 554 (*abrogating Martin v. Franklin Capital Corp.*, 251 F.3d 1284, 1291, n.4 (2001); *Laughlin v. Kmart Corp.*, 50 F.3d 871, 873 (10th Cir. 1995); *Oklahoma Farm Bureau Mut. Ins. Co. v. JSSJ Corp.*, 149 F. App'x 775 (2005)).

[15] *Id.* at 550.

[16] *Id.* at 554.

[17] *Id.*

[18] *Frederick v. Hartford Underwriters Ins. Co.*, 683 F.3d 1242, 1246 (10th Cir. 2012) (quoting *Blockbuster, Inc. v. Galeno*, 472 F.3d 53, 59 (2d Cir. 2006)).

estimate of the plaintiff's claim.'"[19]

### III. Discussion

#### A. Timeliness

In *Dart Cherokee*, the Supreme Court reversed this Court's order remanding this class action on the grounds that the removing defendant failed to include proof of the amount in controversy in the notice of removal itself.[20] The Court held that a removing "defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold" and does not require extrinsic evidence.[21] In reaching its conclusion, the Court stated that "evidence establishing the amount is required . . . only when the plaintiff contests, or the court questions, the defendant's allegation."[22] Drawing from *Dart Cherokee's* framework, Defendants argue that Plaintiff's Second Motion to Remand is untimely because all of the information presented could have been included in his first motion to remand.

The single question on appeal in *Dart Cherokee* was "[t]o assert the amount in controversy adequately in the removal notice, does it suffice to allege the requisite amount plausibly, or must the defendant incorporate into the notice of removal evidence supporting the allegation?"[23] To this the Court answered: "A statement 'short and plain' need not contain

---

[19]*McPhail v. Deere & Co.*, 529 F.3d 947, 956 (10th Cir. 2008) (quoting *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840 (9th Cir. 2002)).

[20]135 S. Ct. at 551–54.

[21]*Id.* at 554.

[22]*Id.*

[23]*Id.* at 551.

6

evidentiary submissions."[24]  Instead of challenging the adequacy of Defendants' proof, Plaintiff now claims on remand to this Court that a "subsequent revelation" shows that the required amount was in fact never in controversy at the commencement of this action.  Because the court must remand a case if it determines at any time before final judgment that subject matter jurisdiction is lacking, Plaintiff's motion is not untimely,[25] and the Court will proceed to analyze the issue on the merits.[26]

### B. Amount in Controversy

As the Supreme Court ruled in *Dart Cherokee*, when "the plaintiff contests the defendant's [amount in controversy] allegation, § 1446(c)(2)(B) instructs: 'Removal is proper on the basis of an amount in controversy asserted' by the defendant 'if the district court finds, by a preponderance of the evidence, that the amount in controversy exceeds' the jurisdictional threshold."[27]  The Tenth Circuit has instructed that there are "several ways in which this may be done—by . . . calculation from the complaint's allegations[;] by reference to the plaintiff's informal estimates or settlement demands[;] or by introducing evidence, in the form of affidavits

---

[24]*Id.*

[25]28 U.S.C. § 1447(c).

[26]Notably, Defendants do not argue that the mandate rule or law of the case bar Plaintiff's second motion. *See Zinna v. Congrove*, 755 F.3d 1177, 1182 (10th Cir. 2014) (Explaining under the law of the case doctrine, "once a court decides an issue the same issue may not be relitigated in subsequent proceedings in the same case," and that "[a]n important corollary of the doctrine, known as the 'mandate rule,' provides that a district court must comply strictly with the mandate rendered by the reviewing court.").

[27]135 S. Ct. at 553–54 (quotation omitted); *see also Frederick v. Hartford Underwriters Ins. Co.*, 683 F.3d 1242, 1247 (10th Cir. 2012).

from the defendant's employees or experts, about how much it would cost to satisfy the plaintiff's demands.'"[28]

In response to Plaintiff's first Motion to Remand, Defendants presented evidence in the form of a declaration from Vice President and Legal Counsel, Charles Henderson.[29] Henderson's declaration explained that the "back of the envelope" calculation of more than $8.2 million in the Notice of Removal was conservative because it was limited to the applicable five-year statute of limitations period despite Plaintiff's expansive claims in the Petition seeking damages for more than ten years.[30] Henderson prepared a spreadsheet of calculations from the Petition's allegations of the alleged damages through 2012.[31] These calculations included Plaintiff's alleged damages for below-market-price and gathering, compression, dehydration, and treatment deductions, valued at over $11 million,[32] as well as Plaintiff's alleged damages for the fuel and lost and accounted for gas or "shrinkage" deductions, valued at over $3.5 million,[33] for a total damage claim through 2012 of over $14.5 million.

Defendants also presented evidence showing that, at mediation approximately four months after the case was removed, Plaintiff's expert's analysis of the various components of the damages alleged in Plaintiff's Petition determined that there was over $21.5 million of alleged

---

[28]*McPhail v. Deere & Co.*, 529 F.3d 947, 954 (10th Cir. 2008) (quoting *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 541–42 (7th Cir. 2006)).

[29]Doc. 23-1, Ex. A.

[30]*Id.* ¶ 7-8.

[31]*Id.* ¶ 2-6, Ex. A.

[32]*Id.* ¶ 5.

[33]*Id.* ¶ 6.

damages through 2012.[34] As Defendants note, even after excluding interest, Plaintiff's analysis evidences over $14.2 million of alleged damages through 2012.[35]

Plaintiff now asserts that the amount in controversy is $3,599,838.97, implying that two portions of his claims are not recoverable. Plaintiff explains this drastic shift from his damage calculation at mediation two ways. First, Plaintiff argues that his Petition does not seek damages from GAS, a 49% assignment of Dart's working interest. By subtracting out this amount, Plaintiff's expert Daniel Reineke concludes that the total damages drops to $9,473,260.[36] Second, Plaintiff contends his Petition does not seek damages on behalf of the approximately 62% of leases that expressly consented to the alleged deduction.[37] Reducing the $9.4 million figure by 62% of these "Express Deduction leases," Reineke estimates the total damages are now approximately $3.6 million.[38] Plaintiff maintains that his recent elimination of damages was the result of a subsequent revelation, not a subsequent event. Plaintiff urges that this distinction is key, as the latter does not affect jurisdiction, while the former does. Because there was no subject matter jurisdiction at the outset of the case, Plaintiff argues, remand is warranted.

The Court is not persuaded. "For jurisdictional purposes, our inquiry is limited to examining the case 'as of the time it was filed in state court.'"[39] "[I]t is well-settled that the

---

[34]*Id.* ¶ 10 & Exs. B–E.

[35]*See id.*

[36]Doc. 54, Expert Dec. of Daniel T. Reineke at 2.

[37]*Id.* at 3.

[38]*Id.*

[39]*Standard Fire Ins. Co. v. Knowles*, 568 U.S. 1345, 1349 (2013) (quoting *Wisc. Dep't of Corr. v. Schact*, 524 U.S. 381, 390 (1998)).

9

amount in controversy test and a federal court's subject matter jurisdiction are not dependent upon whether the plaintiff succeeds in the action or the alleged amount actually is recovered by the plaintiff at the end of the case."[40] "The test to determine the amount in controversy is not the sum ultimately found to be due, but the sum demanded in good faith."[41] "Thus events occurring subsequent to removal which reduce the amount recoverable, whether beyond the plaintiff's control or as a result of his volition, do not oust the district court's jurisdiction."[42] The Supreme Court further elaborated on this conclusion, stating:

> We think this well established rule is supported by ample reason. If the plaintiff could, no matter how bona fide his original claim in the state court, reduce the amount of his demand to defeat federal jurisdiction the defendant's supposed statutory right of removal would be subject to the plaintiff's caprice. The claim, whether well or ill founded in fact, fixes the right of the defendant to remove, and the plaintiff ought not to be able to defeat that right and bring the cause back to the state court at his election. If he does not desire to try his case in the federal court he may resort to the expedient of suing for less than the jurisdictional amount, and though he would be justly entitled to more, the defendant cannot remove.[43]

Diversity jurisdiction attached at the time Defendants filed their notice of removal.[44] Plaintiff requests the Court to disregard two portions of his claim—49% of the working interest assigned to a third party, and 62% of that amount representing the Express Deduction leases. At

---

[40] 14AA Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 3702.4 (4th ed. 2005); *see also Frederick*, 683 F.3d at 1245.

[41] *Frederick*, 683 F.3d at 1245 (quoting *Gibson v. Jeffers*, 478 F.2d 216, 220 (10th Cir. 1973)).

[42] *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 292 (1938).

[43] *Id.* at 294; *see also Stanton v. Greens at Shawnee Apartments Mgmt. Co.*, No. 11-2478-CM, 2013 WL 66034, at *1 (D. Kan. Jan. 4, 2013).

[44] *Stanton*, 2013 WL 66034 at *2; *Berning v. Crop Prod. Servs., Inc.*, No. 11-2359-EFM, 2011 WL 3704710, at *2 (D. Kan. Aug. 23, 2011) (collecting cases).

the time of removal, however, both portions of these claims were included in the scope of the allegations in Plaintiff's Petition, which seeks recovery of all allegedly underpaid royalties "up to the time of trial" for "each lease [of] each member of the [putative c]lass" due to "numerous deductions," including (1) "gathering, compression, dehydration, and/or treatment deductions," (2) "in-kind volumetric" deductions such as "fuel and lost and unaccounted for gas" commonly referred to as "shrinkage," and (3) "a conservation fee deduction."[45]  Plaintiff chose in the Petition to assert a claim for all royalties with respect to all leases through trial.  As Defendants note, there is no exclusion, exception, restriction, carve-out or any other type of limitation in Plaintiff's Petition disclaiming any portion of his claims.  The class definition further encompasses these portions of Plaintiff's claims.  Thus, the Court agrees with Defendants that regardless of whether Plaintiff or the putative class can ultimately prevail on this portion of the claim, it was clearly part of the sum Owens demanded in good faith.

The Supreme Court has explained the general principle that jurisdiction once properly invoked is not lost by developments after a suit is filed, such as a change in the state of which a party is a citizen that destroys diversity.[46]  "[A] plaintiff may not defeat removal by subsequently *changing* his damage request, because post-removal events cannot deprive a court of jurisdiction once it has attached."[47]  A plaintiff may defeat removal, however, "when a subsequent revelation

---

[45]Doc. 1.

[46]*See St. Paul Mercury Indemn. Co.*, 303 U.S. at  293–94.

[47]*Asociacion Nacional de Pescadores a Pequena Escala o Artesanales de Colombia v. Dow Quimica de Colombia S.A.*, 988 F.2d 559, 566 (5th Cir. 1993), *cert. denied*, 510 U.S. 1041 (1994), *abrogated on other grounds by Marathon Oil Co. v. Ruhrgas*, 145 F.3d 211 (5th Cir. 1998).

11

clearly establishes that the plaintiff's claims never could have amounted to the sum necessary to support diversity jurisdiction."[48]

Although the Tenth Circuit has not discussed the distinction between subsequent events and subsequent revelations, the Sixth Circuit's analysis is instructive:

> [I]f a good-faith claim of sufficient amount is made in the complaint, subsequent events that reduce the amount below the statutory requirement do not require dismissal. A distinction must be made, however, between subsequent events that change the amount in controversy and subsequent revelations that, in fact, the required amount was or was not in controversy at the commencement of the action.[49]

In *Jones*, the Sixth Circuit concluded that the district court lacked subject matter jurisdiction where the plaintiffs, subsequent to filing their complaint, discovered that the true amount in controversy was less than the jurisdictional requirement, noting that "[no] subsequent event changed the amount in controversy; rather, subsequent discovery of the true amount [revealed that] there was never more than the [required amount] in controversy."[50] In that case, however, it was the plaintiff that invoked subject matter jurisdiction, filing its lawsuit in federal district court, and later admitted that it had discovered that the amount in controversy was actually less than the threshold amount, requiring dismissal of the case.[51]

---

[48]*Huber v. Taylor*, 532 F.3d 237, 244 (3d Cir. 2008) (citing *Jones v. Knox Expl. Corp.*, 2 F.3d 181, 183 (6th Cir. 1993)); *Morano v. BMW N. Am., LLC*, No. 12-CV-0606(KM)(MAH), 2015 WL 3660324, at *2 (D.N.J. June 11, 2015) (collecting cases).

[49]*Jones*, 2 F.3d at 182–83.

[50]*Id.*

[51]*Id.* at 182.

In this case, Plaintiff's expert applied two discounts to his total damages calculation based on declarations made by Plaintiff's counsel. That declaration recites the publicly-disclosed fact that Dart assigned 49% of its working interest in 2006 and that Defendants have asserted at least 62% of the putative class members' leases expressly allowed the deductions about which Plaintiff complains. As Defendants note, nothing in Plaintiff's second Motion to Remand concedes or establishes that Plaintiff and the putative class are not entitled to or will not pursue either or both of these portions of the total damage claim, or that Plaintiff somehow misstated or miscalculated his damages.[52] In order for Plaintiff to succeed in his request for remand, he must convince the Court that "subsequent revelations" show that these portions of his claim were not in controversy at the time of removal. Even if Plaintiff was never entitled to recover the 49% portion of its claim, Reineke calculates the remaining damages exceed $9.4 million. Clearly, Defendants' assertion that there was no breach of 62% of the leases is not sufficient to nullify 62% of Plaintiff's alleged damages.

Thus, the Court determines that Defendants have demonstrated by a preponderance of the evidence that the requisite amount in controversy exists in this CAFA action. Plaintiff's attempt to revise his damages is not based on a subsequent revelation clearly establishing his claims could not have amounted to the sum necessary to support diversity jurisdiction, and he may not defeat removal by subsequently changing his damage request post-removal. The amount in controversy is the amount placed in issue based on Plaintiff's allegations in his Petition at the

---

[52]*See, e.g., Morano*, 2015 WL 3660324, at *2 (dismissing case where plaintiff discovered the batteries that were the subject of an action against BMW were actually included in the repair policy at issue); *Abel v. Allstate Prop. & Casualty Ins. Co.*, No. 14-CV-00064-DMB, 2015 WL 1292220, at *3–4 (N.D. Miss. Mar. 23, 2015) (remanding case where the plaintiff miscalculated defendant insurance company's potential liability in her complaint, based on her mistaken reliance upon the wrong insurance policy in effect at the time of the underlying accident).

time of removal, not what Plaintiff currently believes he can or cannot recover. "Plaintiff cannot defeat jurisdiction by backtracking on his allegations,"[53] and remand is not warranted.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff's second Motion to Remand (Doc. 51) is DENIED.

**IT IS SO ORDERED.**

Dated: December 3, 2015

 S/ Julie A. Robinson

JULIE A. ROBINSON

UNITED STATES DISTRICT JUDGE

---

[53] *Chen v. Dillard Store Servs., Inc.*, 579 F. App'x 618, 621 (10th Cir. 2014).